UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DISTRICT

JOHN DOE;
JANE DOE,

    Plaintiffs,

  v.

FAMILY DOLLAR STORES, INC.;
HAROLD LANDERS, a/k/a D Harold Landers,
Dennis Shears, Dennis P Shears, and Dharold Shears,
Individually and as agent for Family Dollar Stores, Inc.,

    Defendants.

COMPLAINT
Case No.:

## NATURE OF THE CASE

1.    This action is brought by the plaintiff, John Doe, under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, [42 U.S.C. § 2000 *et. seq.*], to redress male-on-male sexual harassment by the defendants, Family Dollar Stores, Inc. (Family Dollar), and Harold Landers, and retaliation by Family Dollar against Mr. Doe because of his opposition to sexual harassment by Harold Landers. A third cause of action is brought by Mr. Doe under common law for assault and battery. A fourth cause of action is brought by Mr. Doe under common law for intentional infliction of emotional distress. A fifth cause of action is brought by John Doe's wife, Jane Doe, under common law for loss of consortium.

Case 1:07-cv-01262-TWT    Document 1    Filed 01/05/2007    Page 2 of 16

## JURISDICTION AND VENUE

2. Jurisdiction over Mr. Doe's claims of sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991, [42 U.S.C. § 2000 *et. seq.*] is conferred on this Court by 42 U.S.C. § 2000e-5(f)(3).

3. Supplementary jurisdiction over Mr. Doe's common law claims of assault and battery, and intentional infliction of emotional distress, and Mrs. Doe's common law claim for loss of consortium, is conferred on this court by 28 U.S.C. § 1367.

4. The Eastern District of Wisconsin is the proper federal venue for this action pursuant to 28 U.S.C. § 1391, in that Family Dollar resides within the Eastern District and at least some of the unlawful actions occurred in the Eastern District.

## CONDITIONS PRECEDENT

5. All conditions precedent to this action within the meaning of Rule 9(c), Fed.R.Civ.Pro., have been performed or have otherwise occurred.

## DEMAND FOR JURY TRIAL

6. Mr. and Mrs. Doe demand that their case be tried to a jury of their peers.

## PARTIES

7. At all times relevant to the allegations in this Complaint, Plaintiffs, John and Jane Doe, were adult residents of Wisconsin, living in the Eastern District.

8. Defendant, Family Dollar Stores, Inc., upon information and belief, is incorporated under the laws of the State of North Carolina, with its principal place of business located at 10401 Monroe Rd., Charlotte, NC 28201-1017, and operates retail stores across the nation.

9. Defendant, Harold Landers, a/k/a D Harold Landers, Dennis Shears, Dennis P Shears, and Dharold Shears, is an adult resident of the State of Georgia, who lives at 2596 Pangborn Rd., Decatur GA 39033. Mr. Landers was at all times relevant to the allegations of this Complaint an Officer of defendant, Family Dollar, and had the authority to hire and fire Family Dollar employees.

## OPERATIVE FACTS

10. On or about January 6, 2006, Mr. Doe commenced employment as Area Operations Manager with Family Dollar in charge of retail stores throughout Wisconsin.

11. Mr. Doe went to Atlanta, Georgia on January 21, 2006 for on-the-job training. Mr. Doe attended a series of business dinners during training.

12. On January 26, 2006, Mr. Doe's direct supervisor, Mr. Landers, who was Family Dollar's Regional Vice President, called Mr. Doe in his hotel room at 8:26 p.m. and said, Hey [Mr. Doe] this is Howard, how are you doing? Mr. Doe went into everything he had done that week (reporting to his VP). Mr. Landers said he was getting ready to eat, and wanted Mr. Doe to meet him at Taco Mac in 15 minutes. Taco Mac was 15 minutes from Mr. Doe's hotel. Mr. Doe assumed this was yet another business dinner.

13. Mr. Doe got to Taco Mac and Mr. Landers was not there. Mr. Doe got a table and waitress. Mr. Doe called Mr. Landers to make sure he was at the right place. Mr. Landers arrived 10-15 minutes later. Mr. Landers told Mr. Doe that he did not want a table, wanted to sit at the bar, and told Mr. Doe to come to the bar. Mr. Doe said he already had a table and motioned that there was no place to sit at the bar.

14. Mr. Doe and Mr. Landers were in the bar three hours. Mr. Doe sat down but Mr. Landers did not. Mr. Landers introduced Mr. Doe to a lot of people in the bar.

Mr. Landers put his name in to sing Karaoke and they had to wait until he got his last song in--3 or 4 songs total. Mr. Landers said he knew everyone in the bar at Taco Mac and had been going there for 6 years. Mr. Landers went off talking to other people while Mr. Doe sat at the bar. Mr. Landers did not discuss being gay. Mr. Landers said that he and his boss, Mr. Bonnecaze, often went out late and got really drunk together. Mr. Landers also said that people would come back to his house after a late night of drinking and pass out. Mr. Landers said he was having a big party that weekend and was looking that night for a bartender for the party.

15. Mr. Landers and Mr. Doe left before 12:00 p.m. Mr. Doe's bar bill was $17.50. He had four beers in three hours.

16. Mr. Landers called Mr. Doe on his cell phone while Mr. Doe was driving back to his hotel. Mr. Landers said he would take care of the problem with Mr. Doe's hotel charges, asked Mr. Doe for the name and location of the hotel, and said goodbye.

17. When Mr. Doe got to his hotel, (the Country Inn) Mr. Landers was standing in the lobby. When Mr. Doe walked in, Mr. Landers was standing there and walked up the stairs to Rm. 211 in front of Mr. Doe and said he wanted to make sure Mr. Doe "got home safe". Mr. Doe didn't know what to think. Mr. Doe thought Mr. Landers was a little strange. Mr. Doe thought maybe Mr. Landers wanted to talk about business. Mr. Doe used his electronic card to enter his room.

18. Mr. Landers walked in and laid diagonally across the bed on his side. Mr. Landers told Mr. Doe to sit down. Mr. Doe did not sit down. Mr. Landers said Mr. Doe was important to Mr. Landers and Mr. Landers' boss, Mr. Bonnecaze, but how fragile the situation was because Mr. Landers had to beg to get Mr. Doe his position at Family

4

Dollar. Mr. Landers said he was very close to Mr. Bonnecaze and it would just take a tiny slip of Mr. Landers saying something to Mr. Bonnecaze and Mr. Doe would lose his job.

19. Mr. Landers patted the pillow and said come and sit over here. "This is your RVP speaking--I want you to sit over here." Mr. Doe sat down. Mr. Landers said how big is your penis? Mr. Doe did not reply, and exhaled loudly. Mr. Landers said are you cut or uncut? Mr. Doe went to the night stand, pulled out a phone book, and said, "Harold if you're like that, I'm not, call an escort." Mr. Landers said, "No, I don't want that, I want to see your penis before I leave." Mr. Doe gave the book to him again. Mr. Landers said, you don't understand, I'm your RVP and you could lose your job very easily, we're an at-will employer. Mr. Landers said, "unzip your pants". Mr. Doe refused and stood there frozen. Mr. Doe felt terror as memories of the physical and sexual abuse he had suffered as a child in an orphanage, rushed back. Mr. Doe was shocked at what his RVP was saying.

20. Mr. Landers unzipped Mr. Doe's pants, and pushed his hands into Mr. Doe's pants. Mr. Doe repeatedly told his boss to please stop. Mr. Landers pulled Mr. Doe's shirt up, kissed Mr. Doe's nipple, kissed Mr. Doe on the mouth and put his tongue in Mr. Doe's mouth. Mr. Doe was so repulsed he vomited on the bed. Mr. Landers told Mr. Doe, it's okay, you just need to relax. Mr. Doe could not look at Mr. Landers and kept his face turned in the direction he had vomited and then cried. Mr. Landers was upset that Mr. Doe was not aroused. Mr. Landers was frustrated that he couldn't get full access to Mr. Doe's penis, and said that Mr. Doe would have to take his pants off.

21. Mr. Landers walked toward the bathroom and ordered Mr. Doe to take his pants down. Mr. Doe's hands were frozen as he stood there horrified by what was happening. Mr. Doe was shaking his head and crying.

22. Mr. Landers walked out of the bathroom with his pants down to his knees. Mr. Landers undid Mr. Doe's pants button, and pulled his pants and underwear down to his ankles. Mr. Landers walked around to the side of the bed. Mr. Doe was sitting at the headboard. Mr. Landers said, put your hand on my penis. Mr. Doe did not. Mr. Landers said, "This is your RVP speaking [Mr. Doe], put your hand on my penis." Mr. Landers grabbed Mr. Doe's hand and stroked it on Mr. Landers' penis. Mr. Doe was sobbing and pleading with his supervisor to please not do this. Mr. Landers got on the bed and started sucking on Mr. Doe's penis. Mr. Landers spit on his own finger and stuck it in Mr. Doe's anus, pulled it out and asked, "do you like that? -- I like that," and then did it again. Mr. Doe was frozen. Mr. Doe was not aroused. Mr. Landers said, it's okay to have an erection, and became upset that Mr. Doe was not erect. Mr. Landers said, "what's the matter, don't you want to get ahead?" Mr. Doe was extremely distraught.

23. Mr. Landers went back into the bathroom and came out with his pants up. Mr. Doe was wiping tears from his eyes. Mr. Landers said, are you okay? and, "I've never done anything like this before." Mr. Landers went on to tell Mr. Doe he could change Mr. Doe's plane ticket. "I can change anything," he said and, "I'll tell the travel agent I need you in town, what you need to do is call your wife, tell her your working on a special project, you will stay at my house." Mr. Doe continued to be emotionally distraught. Mr. Landers drove off fast in a gold or silver small SUV (possibly Trailblazer).

24. Mr. Landers' conduct described above constituted an infliction of force upon Mr. Doe, without regard to the degree of force applied, and such infliction of force was made in a rude or insolent manner.

25. Mr. Landers' conduct described above violated Mr. Does's right to be free of offensive bodily contacts, that is, contacts which were offensive to a reasonable sense of personal dignity, contacts which were unwarranted by the social usages prevalent at the time and place at which they were inflicted.

26. Mr. Doe didn't want to be there, wanted to go home, but didn't want to lose his job. Mr. Doe vomited again. Mr. Doe took his clothes and wristwatch and put them in a bag. Mr. Doe wanted to take a shower but did not. Mr. Doe put on clean underwear and called a rape crisis line. There was no answer. Mr. Doe called directory assistance for non-emergency Clayton Police.

27. Mr. Doe said to the police dispatcher, "I can't afford to lose my job", and hung up. The female dispatcher called back and kept Mr. Doe on his cell phone. Two officers, M. Whitton and J.D. Ussery, came to Mr. Doe's hotel room door. Mr. Doe handed his phone to the officers and started crying. The officers were there 15-20 minutes, Mr. Doe told them everything, and said he could not afford to lose his job. The officers told Mr. Doe he needed to complete a report and would not lose his job. Mr. Doe called his brother-in-law, an Asst. Police Chief, but could not reach him. Mr. Doe refused to do a report and the officers left.

28. Mr. Doe called the police back and agreed to give a report. Officer Ussery stayed with Mr. Doe, and called about the DNA swab procedure. Mr. Doe gave the

officers Mr. Landers' cell phone number but said they should not say anything because he did not want to lose his job.

29.  Mr. Doe was taken to the hospital, Southern Regional Medical Center for a DNA swab. Mr. Doe was admitted and his vital signs were taken. Mr. Doe was given help numbers to call. Mr. Doe was discharged from SRMC at 5:30 a.m. Mr. Doe went back to his hotel room. Mr. Doe called his wife and told her what happened.

30.  Mr. Doe's wife called Mr. Bonnecaze on January 27, 2006, explained who she was, and said, "We have a big problem, my husband was sexually assaulted by an employee of yours". Mr. Bonnecaze said, "really?" Mr. Doe's wife said, "yes, it was Harold Landers, they went out to dinner, Mr. Landers followed [Mr. Doe] to his hotel, Mr. Landers sexually assaulted [Mr. Doe], put his mouth on [Mr. Doe's] penis, I don't want to tell you all of the details-- I'm calling you because you know who to contact to deal with this." Mr. Doe's wife was crying. Mr. Bonnecaze said, "calm down" and that Mr. Doe should call him.

31.  Mr. Doe called Mr. Bonnecaze, told him he had been assaulted by Mr. Landers, went to the police, was DNA tested, did not want to go over all of it right then, and needed to have off from work at least through Wednesday.

32.  Mr. Bonnecaze told Mr. Doe he could have off. Mr. Bonnecaze told Mr. Doe that he was to deal only with Mr. Bonnecaze. Mr. Bonnecaze called Mr. Doe back asking for a release so he could get the police report. Mr. Bonnecaze never expressed a concern for Mr. Doe's well-being or offered counseling, or assistance.

33.  Mr. Doe received no contact from Family Dollar's HR or legal departments for three days. Instead, Mr. Landers made repeated harassing attempts to

contact Mr. Doe. Mr. Doe had told Mr. Landers repeatedly during their phone discussions on January 27 that Mr. Landers kept calling and emailing him and Mr. Doe wanted him to stop.

34. The conduct described above by Mr. Landers was intended to cause Mr. Doe emotional distress, the conduct was extreme and outrageous, the conduct was a cause of Mr. Doe's emotional distress, and Mr. Doe's emotional distress was extreme and disabling.

35. Mr. Landers acted for the purpose of causing emotional distress to Mr. Doe.

36. The average member of the community would find the conduct of Mr. Landers as a complete denial of Mr. Doe's dignity as a person. The conduct of Mr. Landers was gross and extreme and not merely in the field of carelessness or bad manners.

37. The conduct described above by Mr. Landers had a substantial effect in producing Mr. Doe's emotional distress.

38. Mr. Doe was unable to function in other relationships because of the emotional distress caused by the conduct of Mr. Landers.

39. An EAP counselor called Mr. Doe at 9:30 p.m. on January 27, 2006. Mr. Doe asked the counselor if she worked for Family Dollar. She said no, but she did report to Family Dollar. Mr. Doe said that he could not go over all of it again, he had not slept, and was under extreme emotional distress.

40. The following Monday, Mr. Bonnecaze called Mr. Doe while he was on medical leave. Mr. Doe told Mr. Bonnecaze he was on the way to the hospital and could

not talk, and Mr. Bonnecaze would need to speak with his attorney. Mr. Bonnecaze became hostile. Family Dollar made no contact with Mr. Doe's counsel until February 1, 2006.

41. Family Dollar failed to activate Mr. Doe's healthcare, STD, and LTD benefits, and threatened to terminate Mr. Doe's pay while he was on medical leave, in retaliation for his opposition to discriminatory and harassing employment practices.

42. Family Dollar terminated Mr. Doe's leave on May 4, 2006. Mr. Doe has not been released by his healthcare providers to return to his job with the Family Dollar. Mr. Doe's healthcare providers have concluded that Mr. Lander's sexual assault of Mr. Doe prevents him from ever returning to Family Dollar's employ.

43. A constructive discharge occurred when Mr. Landers, while acting individually and as agent for Family Dollar, sexually assaulted Mr. Doe, Family Dollar refused to activate his benefits, and made his working conditions so intolerable that the Mr. Doe was forced into an involuntary resignation.

44. As a result of the sexual harassment, sexual assault, and retaliation by Mr. Landers and Family Dollar, Mr. Doe has suffered physical and emotional trauma, extreme emotional distress, mental anguish, pain, suffering, loss of wages, loss of benefits, expenses, attorney fees, costs, and disbursements.

45. Mr. Doe and his wife Mrs. Doe had a close, intimate and harmonious marriage relationship prior to the unlawful actions of Mr. Landers and Family Dollar set forth above.

46. Mrs. Doe has the rights to love, affection, companionship, society, comfort, aid, advice, solace, sexual relations, the rendering of material services, and the right of support regarding Mr. Doe.

47. The unlawful conduct of Mr. Landers and Family Dollar against Mr. Doe wrongfully invaded, impaired, and deprived Mrs. Doe of these rights, causing her emotional distress, and loss of the love, affection, companionship, society, comfort, aid, advice, solace, sexual relations, the rendering of material services, and the right of support regarding Mr. Doe.

### FIRST CLAIM FOR RELIEF
### SEXUAL HARASSMENT

48. As and for a first claim for relief, Mr. Doe re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

49. The allegations more particularly described above constituted severe and pervasive sexual harassment against Mr. Doe, with malice or with reckless indifference to the federally protected rights of Mr. Doe, in violation of Title VII of the Civil Rights Act of 1964, and the Civil Rights Act of 1991, [42 U.S.C. § 2000e-2(a)(1)], causing Mr. Doe physical and emotional trauma, extreme emotional distress, mental anguish, pain, suffering, loss of wages, loss of benefits, expenses, attorney fees, costs, and disbursements.

### SECOND CLAIM FOR RELIEF
### RETALIATION-TITLE VII OPPOSITION

50. As and for a second claim for relief, Mr. Doe re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

51. The allegations more particularly described above constituted intentional retaliatory adverse employment action against Mr. Doe, with malice or with reckless

indifference to the federally protected rights of Mr. Doe, in violation of Title VII of the Civil Rights Act of 1964, and the Civil Rights Act of 1991, [42 U.S.C. § 2000e-3(a)], causing Mr. Doe physical and emotional trauma, extreme emotional distress, mental anguish, pain, suffering, loss of wages, loss of benefits, expenses, attorney fees, costs, and disbursements, all to his damage.

### THIRD CLAIM FOR RELIEF
### ASSAULT AND BATTERY

52. As and for a third claim for relief, Mr. Doe re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

53. The allegations more particularly described above constituted assault and battery by Mr. Landers' infliction of force upon Mr. Doe, without regard to the degree of force applied, and such infliction of force was made in a rude or insolent manner, and violated Mr. Does' right to be free of offensive bodily contacts.

### FOURTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

54. As and for a fourth claim for relief, Mr. Doe re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

55. The allegations more particularly described above constituted intentional infliction of extreme and disabling emotional distress caused by Mr. Landers' conduct that was extreme, outrageous, and a complete denial of Mr. Doe's dignity as a person.

### FIFTH CLAIM FOR RELIEF
### MRS. DOE'S LOSS OF CONSORTIUM

56. As and for a fifth claim for relief, Mrs. Doe re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

57. The conduct alleged more particularly above by Mr. Landers and Family Dollar was a wrongful invasion, impairment, or deprivation of Mrs. Doe's right to consortium regarding Mr. Doe.

58. The conduct alleged more particularly above by Mr. Landers and Family Dollar caused Mrs. Doe emotional distress, and loss of the love, affection, companionship, society, comfort, aid, advice, solace, sexual relations, the rendering of material services, and the right of support regarding Mr. Doe.

WHEREFORE, plaintiffs, John and Jane Doe, demand relief as follows:

A. Judgment against defendants awarding Mr. Doe damages for loss of wages and benefits;

B. Judgment against defendants awarding Mr. Doe his costs, disbursements, prejudgment interest, actual attorney's fees incurred in prosecuting this claim, together with interest on said attorney's fees;

C. Judgment against defendants awarding Mr. and Mrs. Doe damages for emotional pain, suffering, humiliation, embarrassment, mental anguish, and medical expenses;

D. Judgment against defendants awarding Mr. and Mrs. Doe punitive damages in an amount deemed sufficient by the trier of fact to punish and deter the defendants from engaging in such unlawful conduct now and in the future;

D. An Order requiring defendant, Family Dollar, to post in conspicuous places in its premises, a notice stating that it has been found

to have violated the Civil Rights Acts of 1964 and 1991, and that Family Dollar will take corrective action; and

E.  Such other relief as the Court deems just and equitable.

Dated this <u>4th</u> day of January, 2007.

<u>s/b Alan C. Olson</u>
Alan C. Olson Bar Number: 1008953
Attorneys for Plaintiffs
Alan C. Olson & Associates, S.C.
2880 S. Moorland Rd.
New Berlin, WI 53151
Telephone: (262) 785-9606
Fax: (262) 785-1324
Email: <u>AOlson@Employee-Advocates.com</u>

14